1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3   ------------------------------x
                                   :
 4   UNITED STATES OF AMERICA,     : Criminal Action No.
                                   :
 5           versus                : 1:17-CR-284
                                   :
 6   CHRISTOPHER ROBERT SUEIRO,    :
                                   :
 7               Defendant. : July 16, 2019
     ------------------------------x
 8
              The above-entitled Competency Hearing and Status
 9   Conference was heard by the Honorable Rossie D. Alston, Jr.,
     United States District Judge.
10
                        A P P E A R A N C E S
11
     FOR THE GOVERNMENT:        JAMES E. BURKE, ESQ.
12                              KELLEN DWYER, ESQ.
                                US Attorney's Office
13                              2100 Jamieson Avenue
                                Alexandria, VA 22314
14
     FOR THE DEFENDANT:         EUGENE VICTOR GOROKHOV, ESQ.
15                              Burnham & Gorokhov PLLC
                                1424 K St NW
16                              Suite 500
                                Washington, DC 20005
17


18
     OFFICIAL COURT REPORTER:   MS. TONIA M. HARRIS, RPR
19                              United States District Court
                                Eastern District of Virginia
20                              401 Courthouse Square, Ninth Floor
                                Alexandria, VA 22314
21

22

23

24

25
```

─────────United States v. Sueiro─────────

2

1        **P R O C E E D I N G S**

2  (Court proceedings commenced at 10:57 a.m.)

3        THE DEPUTY CLERK:  The court calls Case 1:17-CR-284.

4  United States of America versus Christopher Robert Sueiro for

5  a status conference and competency hearing.

6        May I have the appearances, please.  First for the

7  Government.

8        MR. BURKE:  Good morning, Your Honor.  Jim Burke and

9  Kellen Dwyer on behalf of the United States.

10        MR. GOROKHOV:  Good morning, Your Honor.  Eugene

11  Gorokhov here for the defense and Mr. Sueiro is in court as

12  well.

13        THE COURT:  Thank you, counsel.

14        Counsel, as I understand it, there are several

15  things that we need to address before we get to maybe the nuts

16  and bolts of what we're doing.

17        I understand, from looking at the record, that Mr.

18  Sueiro has a request to proceed pro se.  Is that correct?

19        MR. GOROKHOV:  That's correct, Your Honor.

20        THE COURT:  All right.  Mr. Sueiro, you may stand.

21  Good morning, sir.

22        THE DEFENDANT:  Good morning.

23        THE COURT:  Mr. Sueiro, I have to inform you that

24  obviously you have a right to be represented by counsel and

25  you have a right to self-representation.

─────United States v. Sueiro─────

3

1       However, whenever making a decision as to whether or

2  not you're going to waive counsel, that must be knowing and

3  voluntary.

4       Do you understand that concept, sir?

5       THE DEFENDANT:  I am aware of that, yes.

6       THE COURT:  All right, sir.  If I could please ask

7  you to raise your right hand and I'm going to take an oath

8  from you.

9       THE DEFENDANT:  It's against my religion to actually

10  to take oaths as per Matthew in the Bible when Jesus says not

11  to take oaths.

12       THE COURT:  All right, sir.

13       Well, I assume that by saying that, sir, that you're

14  electing not to take the oath.  But do you understand that the

15  information and the response that you provide to me, if they

16  are untrue, can result in a sanction.

17       Do you understand that, sir?

18       THE DEFENDANT:  I'm aware of that.  However, Jesus

19  does say not to take oaths.  And so it's therefore against my

20  religion.  I can show you if you have a Bible handy.  It's in

21  Matthew and other Gospels as well.

22       THE COURT:  Well, sir, I understand that and I

23  appreciate your faith and your willingness to go forward in

24  your faith.  But I'm also a man of faith.  And we can sit here

25  and quote the Bible back and forth until the day is done.  The

──────United States v. Sueiro──────

4

1    Bible also says, "Render unto Caesar what is Caesar's, Render

2    unto God what is God's."

3                 THE DEFENDANT:  Yes.

4                 THE COURT:  Sir, do you understand that concept?

5                 THE DEFENDANT:  I am aware of that, yes.

6                 THE COURT:  So in light of that, sir, what I'm going

7    to do is inform you that the responses that you have or are

8    going to give here will be under penalty of perjury, if

9    they're incorrect.  Do you understand that, sir?

10                THE DEFENDANT:  I'm aware of that.

11                THE COURT:  All right, sir.  Let me ask you some

12   questions:  Sir, this is what we call a Faretta inquiry.  A

13   Faretta inquiry is making sure that you have the ability to

14   represent yourself.  So I'm going to ask you some questions.

15   If you don't understand those questions or you want me to

16   follow-up on those questions, please feel free to ask me.

17                Do you know what a Faretta inquiry is?

18                THE DEFENDANT:  I am familiar with it, yes.

19                THE COURT:  Okay.  Explain to me what you believe a

20   Faretta inquiry is, sir.

21                THE DEFENDANT:  It's a series of questions asked to

22   determine if someone is able to represent themselves based on

23   the case law that it comes from.

24                THE COURT:  Very good, sir.

25                Sir, and as I said earlier, in order to represent

United States v. Sueiro

5

1  yourself, you have to make a determination as to whether

2  you're voluntarily and knowingly making a decision to go

3  forward in this matter.  So I'm going to ask you some

4  questions.  Again, if you do not understand these questions,

5  please feel free to ask me.  Let me tell you, from the outset,

6  that a defendant who elects to represent himself cannot

7  thereafter complain that the quality of its own defense as a

8  denial of effective assistance of counsel.

9           Do you understand that, sir?

10          In other words, you're going to be held to the same

11 standard that a lawyer will be held in the prosecution of this

12 case.

13          THE DEFENDANT:  I am aware of that.

14          THE COURT:  All right, sir.  Have you ever studied

15 law, sir?

16          THE DEFENDANT:  I actually have, yes.

17          THE COURT:  How much have you studied then, sir?

18          THE DEFENDANT:  I mean I don't know how you -- how

19 you can gauge it.  I've studied various aspects of it.

20          THE COURT:  Okay.  Well, the gentleman that's

21 representing you obviously went through four years of college

22 and three years of law school and has passed the Bar.  And I'm

23 not suspecting that you have that high standard of education,

24 but tell me what you've done to understand and study the law.

25          THE DEFENDANT:  I have read and studied various

─────United States v. Sueiro─────

1   parts of the law, yes.

2         THE COURT:  All right.  Tell me how a jury -- tell

3   me how jury trials are conducted.

4         THE DEFENDANT:  I'm sorry, can you elaborate on...

5         THE COURT:  Sir, in conducting a jury trial we're

6   going to go through several processes.  Some of that processes

7   involves selection of a jury, a process called voir dire.

8         Do you know what voir dire is, sir?

9         THE DEFENDANT:  It's Latin.

10        (Laughter.)

11        THE COURT:  Very good.

12        THE DEFENDANT:  I mean I know that there are --

13   there is a jury of 12 people selected and I mean I know how

14   all that works, yes.

15        THE COURT:  Explain to me how it works.

16        THE DEFENDANT:  There's a jury of 12 people selected

17   and they listen to the case from both sides.  And at the end,

18   they talk amongst themselves when deliberating and decide if

19   they think the individual is guilty or not guilty.

20        THE COURT:  Tell me how they're selected.  That's

21   what voir dire is.  Tell me how they're selected.

22        THE DEFENDANT:  There's a process with -- well,

23   they're -- I'm figuring out how to say this.

24        THE COURT:  Speak frankly.  You don't need to use

25   fancy words.

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─
EASTERN DISTRICT OF VIRGINIA

─────United States v. Sueiro─────

7

1        THE DEFENDANT:  Yeah, they -- they're chosen based

2  on certain factors like if -- if the defense has certain

3  interest in a particular juror, they think that they might be

4  good for their case, they'll try to keep them.  If not,

5  they'll try to have them taken off.

6        THE COURT:  Okay.  That's generally how it works.

7  But what typically happens when you have a lawyer is that the

8  lawyer, in preparation for the voir dire process, will submit

9  questions to the Court that he or she wants the Court to ask

10  the people who may potentially serve on the jury, and then the

11  judge will conduct the voir dire after listening and

12  considering the questions that the Government may want to

13  offer.  And the questions have to be relevant and have to deal

14  with the ability for the people who are going to potentially

15  serve on the jury to be able to render a fair verdict and sit

16  impartial to the matter, until they've actually had the

17  opportunity to hear the case.  So that's how voir dire

18  typically works.

19        Do you think you would be comfortable with going

20  through that process, sir?

21        THE DEFENDANT:  Yes.

22        THE COURT:  How old are you, sir?

23        THE DEFENDANT:  Thirty-seven.

24        THE COURT:  What is your highest level of education?

25        THE DEFENDANT:  I finished school.  I didn't do

─────────United States v. Sueiro─────────

8

1   college, although I finished all of grade school.

2         THE COURT:  You finished high school?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Did you get a GED or a regular high

5   school diploma?

6         THE DEFENDANT:  A GED.  I stopped going earlier and

7   just went ahead and got a GED to cut it short.

8         THE COURT:  Okay.  Have you done any education or

9   pursued any education after that, say, community college or

10   college or anything like that?

11         THE DEFENDANT:  I did.  And I scored very well, very

12   high on the placement testing.  However, at the time that I

13   did that, I didn't -- I wasn't doing great financially so I

14   decided not to continue on.  But I have studied various things

15   on my own in my own time.  Anything that interests me

16   basically.

17         Nowadays, you don't -- you don't really need to pay

18   for education to get an education.  It's all available if you

19   just know how to find it.

20         THE COURT:  Well, I have two daughters with a whole

21   lot of student loans that I'm paying back, so I think you do

22   have to pay for education if you do get education.

23         But sir, let me ask you this --

24         THE DEFENDANT:  To get an official document saying

25   that you paid into the system you do, but to actually get an

─────────United States v. Sueiro─────────

9

1    education where you are knowledgeable then, you don't actually

2    in today's world.

3         THE COURT:  Sir, I'm going to be frank with you and

4    I've read the transcripts of your prior hearings with

5    Judge Trenga and there were some times that it was really

6    difficult.  I like to be frank and straight up with people.

7    And there were times that you were speaking over Judge Trenga

8    and you apparently were not respectful of the process and the

9    like.

10        Up until this point, you've been respectful to me

11   and I do appreciate that.  But do you understand that if

12   you're going to represent yourself, there's going to be a code

13   of conduct that's going to be expected of you and that code of

14   conduct is going to be the same code of conduct that any

15   lawyer would have to adhere to.  And that is not speaking over

16   the judge, listening when you need to listen, speaking when

17   it's your turn, and working with courtroom security people.

18        Do you understand that, sir?

19        THE DEFENDANT:  I'm aware that there's a certain way

20   that -- that you-all want things to be done.  However, in my

21   defense, I will say honestly I was never speaking out of turn.

22   I was actually well within, according to the letter of the

23   law, well within my lawful rights to speak at the time I was

24   speaking.

25        As you can see, you said you read the transcripts, I

─────────────United States v. Sueiro─────────────

10

1   quoted over a dozen case laws verbatim and some of those even

2   say very -- in very detailed manner that under the

3   circumstances I was allowed to speak in my defense in that

4   case.

5           THE COURT:  I'm unaware of the cases that you've

6   read, but as far as the process is concerned and the decorum

7   in the courtroom, that is my responsibility to control.

8           Do you understand that, sir?

9           THE DEFENDANT:  I'm aware of that.  However, my --

10          THE COURT:  By saying you're aware of it, doesn't

11  answer my question.  Are you willing to adhere to it?

12          THE DEFENDANT:  Well, my question about that is --

13  which trumps which, the decorum of the court or the letter of

14  the law?  Because it seems to me like since this is a court of

15  law, the letter of the law should trump any decorum or any

16  rules of procedures.

17          THE COURT:  To make it simple, the Government

18  doesn't get to make the rules, you don't get to make the

19  rules, I don't get to make the rules.  We all have to follow

20  the rules.  But if you're telling me that you're unwilling to

21  follow the rules of the Court and going to follow some rule or

22  mandate that you want to pursue, it's going to undermine my

23  ability to allow you to represent yourself.  Everyone has to

24  follow the rules.

25          THE DEFENDANT:  No, that's not what I'm saying at

United States v. Sueiro

11

1   all.  What I'm saying is, I am just saying that I -- I adhere

2   to the letter of the law as a court of law should.  If the

3   letter of the law says in a particular matter that someone has

4   the right to speak in their defense, then who are any of us to

5   go against the letter of the law.

6           THE COURT:  All right.  Do you understand, sir, that

7   you're expected to comply with all the applicable rules of

8   court and procedure?

9           THE DEFENDANT:  I am aware of that.  However, it

10  would make all logical sense that none of those things should

11  conflict with the letter of the law.

12          THE COURT:  All right, sir.  Have you ever

13  represented yourself in a criminal action?

14          THE DEFENDANT:  If you count the times I did here,

15  yes.

16          THE COURT:  Okay.  Explain that, sir.

17          THE DEFENDANT:  Well, you've read the transcripts.

18  I mean they are saying technically I wasn't officially --

19          THE COURT:  Oh, I understand what you're saying.

20  Those times you actually had counsel with you, but you were

21  speaking on your own behalf, is that what you are saying?

22          THE DEFENDANT:  Yes, because I wasn't accepting

23  counsel.

24          THE COURT:  So I'm going to go over some charges

25  that you have.  And I'm going to make sure that you understand

———United States v. Sueiro———

1   those charges, because this is important as we go through this

2   process to make sure that you understand what you're charged

3   with.

4          Do you understand, sir, that you're charged with

5   possession of child pornography and that particular offense

6   can result in you having a sentence of no more than 20 years

7   and a fine of up to $250,000, are you aware of that?

8          THE DEFENDANT:  I'm aware of what the bogus charge

9   is.

10          THE COURT:  Do you understand, sir, that you're also

11   charged with receipt of child pornography and in that case or

12   that matter is not less than five years or more than 20 years.

13   And once again a fine of up to $250,000.

14          THE DEFENDANT:  Again, I am aware of the bogus

15   charge, yes.

16          THE COURT:  Do you also understand that you're

17   charged with an attempted receipt of child pornography.  And

18   once again that charge carries not less than five years, no

19   more than 20 years and a fine of up to $250,000.

20          THE DEFENDANT:  Again, I am aware of the bogus

21   charge, yes.

22          THE COURT:  Okay.  Finally, sir, you are charged

23   with the promotion and solicitation of child pornography, not

24   less than five years, no more than 20 years, and a fine of up

25   to $250,000?

—————United States v. Sueiro—————

1          THE DEFENDANT:  Again, I'm aware of the bogus

2    charge, yes.

3          THE COURT:  Do you understand, sir, that if you're

4    found guilty, the Court must impose a special assessment of

5    $100 dollars of each count?

6          THE DEFENDANT:  I am aware of that, yes.

7          THE COURT:  Okay.  Do you understand that if you're

8    found guilty of more than one of these crimes, that the Court

9    can impose a consecutive sentence.  In other words, one after

10   the other.  Add those sentences up.

11         THE DEFENDANT:  I'm aware.

12         THE COURT:  Do you understand that the advisory

13   sentencing guidelines may have an effect on your sentencing if

14   you are indeed found guilty?

15         THE DEFENDANT:  I am aware, yes.

16         THE COURT:  Okay.  Do you understand, sir, that if

17   you are representing yourself, you are on your own.  I cannot

18   tell you or advise you to how to prosecute or defend your

19   case.

20         THE DEFENDANT:  Yes, I'm aware of that.

21         THE COURT:  Okay.  Are you familiar with the Federal

22   Rules of Evidence?

23         THE DEFENDANT:  I don't want to say the wrong thing.

24   I definitely am familiar.  I'm just trying to remember now.

25         THE COURT:  Let me ask it another way.  Have you

1   read the Federal Rules of Evidence?

2          THE DEFENDANT:  I'm trying to remember.  I think I

3   did, but I don't -- because I know that sounds familiar.

4          THE COURT:  There are two things that are going to

5   control the protocols that we're going to adhere to in this

6   court.  One is the Federal Rules of Evidence and the other is

7   the Federal Rules of Criminal Procedure.  Obviously, you are

8   charged with crimes of those procedures that we use in

9   adjudicating cases that are criminal in nature.  And that

10   might be where your confusion is.

11          But have you either read either one of those

12   particular sets of rules?

13          THE DEFENDANT:  I think I did at some point in -- in

14   studying various things, but I can't recall.

15          THE COURT:  When was that?

16          THE DEFENDANT:  When was what?

17          THE COURT:  That you actually -- that you have some

18   recollection of looking at those things.

19          THE DEFENDANT:  Yes, I've been dealing with this for

20   a while, so maybe some years ago that I've been dealing with

21   this.

22          THE COURT:  Sir, I have to tell you that the rules

23   of evidence govern what evidence may or may not be introduced

24   at trial.  And that in representing yourself, you must abide

25   by these Federal Rules of Evidence and Federal Rules of

─────United States v. Sueiro─────

15

1    Criminal Procedure.

2              THE DEFENDANT:  Okay.

3              THE COURT:  Do you understand that, sir?

4              THE DEFENDANT:  I do.  I get everything you're

5    saying, yes.

6              THE COURT:  Okay, sir.

7              Sir, I have a responsibility to make sure that you

8    have a fair trial.  That is my ultimate goal in your case and

9    in any case, that this Court hears.  And I have to tell you,

10   in all candor, that it's best to have a trained lawyer.

11   Someone who has gone to law school, who has passed the Bar,

12   who is acquainted with the rules, and who has an obligation,

13   ethical and otherwise, to represent you to the best of his or

14   her ability, that is a responsibility.  And there are

15   safeguards in place to make sure whether the lawyer does do

16   those kinds of things and make sure that your rights are

17   protected.

18             And I want to suggest to you, sir, that while,

19   obviously, you're able to hold a communication or a

20   conversation with me and it's been cordial and appropriate,

21   that it's very dangerous for a person who is not trained in

22   the law to represent him or herself.  And these are very, very

23   serious charges that could result with you going to prison for

24   the rest of your natural life.  I have to advise you of that,

25   sir.

─────────────────United States v. Sueiro─────────────────

16

1          THE DEFENDANT:  I'm aware.

2          THE COURT:  Sir, in response to the concern that I

3    have for you, what is your position in the matter?

4          THE DEFENDANT:  I still definitely want to represent

5    myself.  Absolutely.

6          THE COURT:  Was your decision to do this voluntary?

7    In other words, has anyone forced you to make this decision?

8          THE DEFENDANT:  No one has forced me, no.

9          THE COURT:  Have you spoken with your current

10   counsel about this decision?

11         THE DEFENDANT:  A couple of times, yes.

12         THE COURT:  Without divulging the specifics of that

13   conversation, did your lawyer try as best he could to advise

14   you that he thought it was in your best interest for him to

15   represent you or to have a lawyer represent you, rather than

16   yourself?

17         THE DEFENDANT:  Yes.  I mean I'm aware of all of

18   that, but I still want to represent myself regardless.

19         THE COURT:  Sir, I have some concerns about your

20   statement that you've sort of looked at and can't recall

21   reading the Federal Rules of Evidence and the Federal Rules of

22   Criminal Procedure.  I respect the answer that you want to try

23   to be as truthful as you could, but I feel very uncomfortable

24   with the fact that you have not read those rules and have a

25   basic understanding of those rules because they're going to be

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

───────United States v. Sueiro───────

17

1   required of you as we prosecute this case.

2           What do you have to say in response to that, sir?

3           THE DEFENDANT:  Well, again, like I said, it

4   definitely is not unfamiliar to me.  That's why I recognized

5   it when you said it.  I read a lot of different things and so

6   I don't remember exactly the details of that, but I'm pretty

7   sure I did.  It was one of -- had to be one of the things I

8   read over because I remember the name of it.  That -- the name

9   of it is familiar to me.

10          THE COURT:  Thank you, sir.  You can have a seat.

11          THE DEFENDANT:  I've been reading a lot of different

12  things.

13          THE COURT:  I appreciate that, sir.  You may have a

14  seat, sir.

15          THE DEFENDANT:  All right.

16          THE COURT:  Does the Government have a position on

17  this?

18          MR. BURKE:  Yes, Your Honor.  The Government opposes

19  the defendant's Faretta motion.  The Government has grave

20  concerns about the defendant's ability to comply with the

21  Court's rules.  I think he has demonstrated repeatedly that he

22  would -- is willing to disregard the Court, to speak over the

23  Court, to ignore proper decorum.  And so we would oppose that

24  motion, Your Honor.

25          In the event that Your Honor is inclined to grant

─────United States v. Sueiro─────

18

1   it, however, we would request that you keep Mr. Gorokhov as

2   shadow counsel or backup counsel in the courtroom to allow for

3   the eventuality that Mr. Sueiro cannot continue to represent

4   himself.

5          THE COURT:  In light of the Faretta inquiry that the

6   Court has just conducted, what factors do you suggest support

7   your position?

8          MR. BURKE:  Your Honor, I think that the defendant's

9   behavior thus far has shown that he is not willing to follow

10  the appropriate procedures.

11         And the Fourth Circuit has held in the *Frazier-El*

12  case that the right of separate -- excuse me -- the right of

13  self-representation do not exist to be used as a tactic for

14  delay, disruption, or distortion of the system, or the

15  manipulation of a trial process.

16         And the Government has concerns based on his prior

17  behavior.

18         THE COURT:  Let me interrupt you at that point.

19  Again, I appreciate the record in this matter and I've read

20  it.  But I will say that the gentleman is respectful of the

21  Court this morning.  I think he made a point of trying to be

22  respectful.

23         And maybe he's looking at it as I've got a new judge

24  and said it's a new day, and we're going to establish a new

25  relationship, and we're going to work together to try to bring

—————United States v. Sueiro—————

19

1    this thing to an end.  So he's been appropriate today.  So

2    that militates in his favor, quite frankly.  But with regard

3    to this specific Faretta inquiry that we've conducted, what

4    things would you point to to suggest that the better course is

5    to keep him with counsel?

6              MR. BURKE:  Your Honor, I think that as you're

7    questioning and the defendant just elucidated, he is not

8    familiar or appears that he is not familiar with the Federal

9    Rules of Evidence or the Federal Rules of Criminal Procedure.

10   And in order to conduct a trial appropriately, I think he

11   would have to have some substantive knowledge of those things

12   or at least have someone on hand to advise him of those -- of

13   those rules.

14             THE COURT:  All right, sir.  Counsel, I know that

15   you're in a tough spot here.  Do you have any comment?

16             MR. GOROKHOV:  Your Honor, only to say that, you

17   know, I agree with everything that Your Honor warned Mr.

18   Sueiro.  I've made the same statements as well.  That being

19   said, I think I have a duty to urge this Court to allow Mr.

20   Sueiro to exercise his constitutional right.  Under the

21   circumstances, as Your Honor pointed out, I think Mr. Sueiro

22   has been respectful, his answers are, I think, intelligent,

23   thoughtful, and he's made great progress since this Court --

24   since this case was before Judge Trenga some months ago.  I

25   think that shows that he's actually willing to go along with

────────United States v. Sueiro────────

20

1    the Court's procedure and be respectful and I would urge this

2    Court to allow him to do that.

3            I would also point out that I think if the Court

4    follows the course recommended by the Government, I think

5    there's going to be a serious problem in terms of the

6    appellate review of this case, given Mr. Sueiro's responses to

7    the Court here today.

8            So I would, as much as it pains me, I would urge

9    this Court to allow Mr. Sueiro to proceed in his own defense.

10   And if necessary, I'd be glad, of course, to serve as standby

11   counsel and step in should it be necessary.

12           THE COURT:  Thank you, sir.

13           Mr. Sueiro, this is your motion.  You may stand,

14   sir.  If you have anything you want me to consider, you can

15   say it at this time, sir.

16           THE DEFENDANT:  Yes, I just wanted to say again that

17   I never had any intention or actually did anything to

18   disrespect the law of the land.  Everything that I said and

19   did was within my rights.  Otherwise, I wouldn't have done it.

20           I am not trying to break any rules or anything.  I'm

21   just trying to do what is within my rights to do.  So I mean

22   if you looked over the transcripts, you can see that I didn't

23   go outside of what -- what is my rights.

24           However, my rights have been compromised a number of

25   times in court already.  And so I just don't understand why it

———United States v. Sueiro———

21

1    seems to be everyone decided that it's okay for the Court to

2    violate my rights, but then when it comes to this question of

3    rules and etiquette, even though the letter of the law says

4    otherwise in certain matters, then I'm at fault, because I'm

5    insisting on my rights being honored.

6             This just doesn't make any sense to me.

7             For example, just one thing to point out is the fact

8    that -- and I want to reiterate again that I do request and

9    demand a speedy trial.  However, my Sixth Amendment right to

10   speedy trial has been violated by well over a year.  The day

11   for that deadline --

12            THE COURT:  Let's talk about the speedy trial later.

13   I will let you know that during the time that the issue of

14   competency was considered, there's some circumstances which

15   dictate how that time was to be computed.  So let's set the

16   speedy trial issue aside.

17            THE DEFENDANT:  Right.  I'm aware of that as well.

18   But even with that extra time to take into consideration, it's

19   still way past the date.  But yet that right continues to be

20   violated in every second that I'm in that jail or every second

21   that I'm in this courtroom.  That right is being violated more

22   and more and more because I shouldn't have to be dealing with

23   this.

24            So no one is talking about the Court being at fault

25   there.  It seems like the Court can do no wrong, but when I

─────United States v. Sueiro─────

22

1   speak, according to the letter of the law for my rights, then

2   I'm the bad guy.  That doesn't make any sense.

3          THE COURT:  All right, sir.

4          Thank you, sir.  You may have a seat.  Sir, this

5   doesn't come down to whether you're a bad guy or not.  I'm not

6   assessing your behavior.  As far as I'm concerned, your

7   behavior here this morning has been very good.  I have no

8   problem with the way you've responded to the Court's

9   questions, I have no problem with the way that you've

10  conducted yourself, so that is definitely to your advantage.

11  My concern though, as it relates to this, first of all, your

12  hesitancy to recognize that you're going to have to follow the

13  rules because it seems like you have your own set of rules

14  that you believe should control how we do the process, and

15  that's what I heard you say and that's my evaluation of the

16  credibility determination I've made with regard to that.

17         Plus I have some real struggles with this idea that

18  you really don't have a real good feel for the Federal Rules

19  of Evidence and Federal Rules of Criminal Procedure, which are

20  going to be the most important thing that we have to use in

21  dealing with the matters that are before us.

22         And so despite your presentation, despite your

23  counsel's support of your position and advocacy on your

24  behalf, I believe that the requirements under Faretta have not

25  been met and I'm going to keep your current counsel involved

———United States v. Sueiro———

1   in the case.  And that's the decision of the Court.

2           All right.  Let's go ahead and move to the next

3   issue and that is what Mr. Sueiro has raised.  And that is the

4   issue of speedy trial.  I had my law clerk get in touch with

5   both counsel saying that I wanted to have some idea of where

6   we were and I think there was an indication that the

7   Government wanted to file something and I really haven't heard

8   from defense counsel.  I appreciate why you haven't filed

9   anything, because you didn't know the status of the case.  So

10  let's work with the Government's position and go back to

11  defense counsel.

12          MR. BURKE:  Yes, Your Honor.  I think the short

13  answer is that the Government has calculated their 41 days

14  remaining on the speedy trial clock for Mr. Sueiro's case.

15  The vast majority of the time that has elapsed in this case,

16  Your Honor, has been either tolled by pending motions, tolled

17  by Judge Trenga for the purposes of psychological evaluations,

18  or for the ends of justice to allow his new counsel to get up

19  to speed.

20          THE COURT:  Okay.

21          MR. BURKE:  And it's a bit Byzantine, Your Honor,

22  but I'm more than happy to lay it out in all its complexity if

23  Your Honor would like me to brief the issue.

24          THE COURT:  Why don't you go ahead and brief the

25  issue so that I can have the ability to assess it.  Based upon

─────────United States v. Sueiro─────────

24

1   my own general evaluation of the case, we need to try this

2   case sooner rather than later.

3           MR. BURKE:  Agreed, Your Honor.

4           THE COURT:  That's the impression that I get.

5   Counsel, did you have anything else to say?

6           MR. GOROKHOV:  I have nothing to add, Your Honor,

7   other than to say that, you know, the -- given Mr. Sueiro's

8   statements here in court today, I would ask the trial be --

9   the -- that the case be tried within the speedy trial time

10  frame.

11          THE COURT:  Absolutely.  And what we're going to do

12  today is go ahead --

13          Let me ask you this, counsel, without necessarily

14  positioning yourself in this regard.  Is your calculation

15  somewhat close to the 41 days that the Government is talking

16  about?

17          MR. GOROKHOV:  I believe their calculation is

18  correct, Your Honor.

19          THE COURT:  Okay.  You believe their calculation is

20  correct.  So if we can get this matter set on the docket

21  within that 41 days, you believe that the requirements of

22  speedy trial will be met.

23          MR. GOROKHOV:  Yes, Your Honor.

24          THE COURT:  All right.

25          MR. BURKE:  Your Honor, if I might.  There are

—————United States v. Sueiro—————

25

1  currently pending motions in limine, so technically it is

2  tolled as of right now.

3          THE COURT:  All right.  Madam deputy clerk, tell me

4  what days we have.

5          (Discussion off the record.)

6          THE COURT:  How long do you-all think you're going

7  to need for trial?

8          MR. BURKE:  We were in the process to discuss August

9  the 12th or September the 9th as the most fortuitous dates for

10  the witnesses and the parties.

11          THE COURT:  Defense counsel.

12          MR. GOROKHOV:  Those dates work for us.  I think,

13  you know, it would be the preference of Mr. Sueiro to try this

14  case sooner, if possible.

15          THE COURT:  Yes, sir.

16          MR. GOROKHOV:  I do have a few conflicts, but not

17  many, Your Honor.

18          THE COURT:  All right.  Can you tell me a little bit

19  about the conflicts.  And I know how hard it is to be defense

20  counsel, that you're running from courthouse to courthouse,

21  and courtroom to courtroom.

22          MR. GOROKHOV:  Yes, Your Honor.  I have a few.  I

23  have a sentencing -- I have one conflict on the 22nd of July,

24  but the rest of that week is free.  There are just one day

25  here and there.  I'm actually pretty open this summer, Your

─────United States v. Sueiro─────

26

1   Honor.

2            THE COURT:  How many days do you anticipate for

3   trial?

4            MR. GOROKHOV:  I defer to the Government on that.

5            MR. BURKE:  Your Honor, I'd say between two to

6   three.

7            THE COURT:  Okay.  All right.

8            (A pause in the proceedings.)

9            THE COURT:  Counsel, how does starting on August 12

10  look?

11           MR. BURKE:  It works for the Government, Your Honor.

12           MR. GOROKHOV:  It works for us, Your Honor.  Thank

13  you.

14           THE COURT:  All right.  August 12th.  We'll set this

15  matter for August 12th.  We'll tentatively schedule it on the

16  docket for three days.  We'll work for three days.  And,

17  obviously, if it's more efficient, we can do it that way.  I

18  would ask that counsel get to me, as soon as practicable, the

19  suggested voir dire.  It would be my preference that if we can

20  get it in by the end of this week, that would be great.  We'll

21  go ahead and set the matter for that.  We'll set it for three

22  days.

23           Okay.  Are there any other housekeeping matters that

24  we need to take care of?

25           MR. BURKE:  Your Honor, what's the Court's

United States v. Sueiro

27

1   preference for resolving the motions in limine?  That would

2   impact the Government's evidence, which is pretty substantial.

3            THE COURT:  Okay.  How many motions do you have?

4            MR. BURKE:  I believe the Government has three and I

5   think defense counsel's has been resolved, if I'm not

6   mistaken.

7            (A pause in the proceedings.)

8            MR. BURKE:  There may be more than that, Your Honor.

9            THE COURT:  Well, let's strike while the iron is

10  hot.  Let's go ahead and see if we can -- being the new

11  person, I've got a wide open docket.  So let's go ahead and

12  see if we can do that this week.

13           MR. BURKE:  Okay.

14           THE COURT:  Off the record.

15           (Discussion off the record.)

16           THE COURT:  How long do you think you are going to

17  need for your motions; maybe an hour?

18           MR. DWYER:  If that, Your Honor, probably less.

19           THE COURT:  Counsel, how long for yours?

20           MR. GOROKHOV:  I think that's fair, Your Honor.

21           THE COURT:  How about 1 o'clock on Friday, does that

22  sound good?

23           MR. GOROKHOV:  Your Honor, would it be possible for

24  it be at two o'clock.  I have a meeting at 1:00.

25           THE COURT:  Sure.  2:00.

─────────────United States v. Sueiro─────────────

28

1          MR. GOROKHOV:  Thank you, Your Honor.

2          THE DEFENDANT:  May I ask a question?

3          THE COURT:  Yes, please stand.

4          THE DEFENDANT:  I would really like to see the full

5    writing on this.

6          THE COURT:  I'm sorry.

7          THE DEFENDANT:  I would like to see all the

8    documentation on this.  How they're calculating the speedy

9    trial thing, because the date for that ended was on May 1st of

10   2018.  The very first time I came back into court, after that

11   date had passed, was May 10th and I began raising the issue

12   all the way back then.  And this carried from one court to the

13   next, to the next, to the next, and it was never resolved.  It

14   kept being pushed under the carpet.

15         Now, all of sudden somehow -- and that was even

16   before all these competency evaluations, which were unlawful

17   under the circumstances.  That's another topic entirely.

18         So how is it that the date had already expired and

19   now somehow it hasn't expired.  That doesn't make any sense.

20         THE COURT:  So the Government has suggested, and

21   your defense counsel has recognized, that there's a

22   calculation that suggested we need to do it within 41 days.  I

23   haven't made an ultimate determination as to whether or not

24   that is correct, because I want to see what the Government's

25   calculation is.  And so your position may have some merit, but

—————United States v. Sueiro—————

29

1   I need to evaluate it before I can make a final determination

2   if that is indeed correct.

3          But what I do need to do today, because we need to,

4   assuming that the Government's calculation is indeed correct,

5   set the matter so that we can be within the 41 days that the

6   Government has suggested.  So if the Government is incorrect

7   and I'm going to do the calculation myself, then you may be in

8   a better position.

9          But as far as today is concerned, I need to go ahead

10  and set the matter, assuming for the sake of discussion the

11  Government's 41-day calculation is correct, but I will take

12  into consideration what you're raising.

13         THE DEFENDANT:  Okay.  I'm asking to be given the

14  same things you are looking at so I can see --

15         THE COURT:  Sure.

16         THE DEFENDANT:  Because I know for a fact that's not

17  correct.

18         THE COURT:  Sure.  The Government has a

19  responsibility and obligation and if there's anything that

20  they file with the Court to provide it to your defense

21  counsel; your defense counsel has an obligation to provide it

22  to you.

23         THE DEFENDANT:  Okay.

24         THE COURT:  All right, sir.  Thank you.

25         MR. GOROKHOV:  Thank you, Your Honor.  And just in

—United States v. Sueiro—

30

1   light of what Mr. Sueiro just said, I don't want to -- I

2   respect the Court's ruling on Faretta and I don't -- I know

3   the Court doesn't want to now relitigate the issue, I did want

4   to let the Court know that I think Mr. Sueiro's objection

5   regarding speedy trial actually is some evidence of his

6   ability to represent himself and to persist in his interest in

7   the case.

8            I also did want to notify the Court that, you know,

9   in order to protect the record for appeal, I do want to file

10  a further pleading on the Faretta issue.

11           THE COURT:  Yes, sir.

12           MR. GOROKHOV:  If that's fine with the Court.

13           THE COURT:  Yes, sir.

14           MR. GOROKHOV:  Thank you, Your Honor.

15           THE COURT:  As I said, the determination that the

16  Court made was essentially a credibility determination.  And

17  based upon that credibility determination, I believe that the

18  Court is in a good position to keep competent counsel with Mr.

19  Sueiro in light of the circumstances presented.

20           As I said, Mr. Sueiro did not present himself

21  undeserving today.  But yet the Court had to make a

22  determination based upon the credibility of the circumstances

23  presented.

24           MR. GOROKHOV:  Thank you, Your Honor.

25           THE COURT:  All right.  Anything else we need to do,

─────────────United States v. Sueiro─────────────

31

1   counsel?

2          MR. BURKE:  No, Your Honor.

3          THE COURT:  Counsel.

4          MR. GOROKHOV:  No, Your Honor.  Thank you.

5          THE COURT:  Mr. Sueiro, your counsel will be in

6   touch with you regarding all of the things that were discussed

7   today and will also be in touch with you in regard to anything

8   that the Government files in this matter.  And I'm sure that

9   he will get it to you in a timely manner.  We'll be back in

10  court next Friday at two o'clock to deal with the motions that

11  are presented both by your counsel and by the Government.

12         Do you have any questions, sir?

13         THE DEFENDANT:  You said next -- what date?

14         THE COURT:  Friday.

15         THE DEFENDANT:  Next Friday.

16         THE COURT:  This coming Friday.

17         THE DEFENDANT:  Okay.

18         THE COURT:  This coming Friday.

19         And sir, I understand that you want to represent

20  yourself, but in light of the determination the Court has made

21  today, are you satisfied with the services of counsel?

22         In other words, he advocated your position.  Are you

23  satisfied that he did the best job he could do today?

24         THE DEFENDANT:  I can't honestly say that I'm

25  satisfied because the only way I can be would be able to be

─────United States v. Sueiro─────

32

1   representing myself because that's the only way I can assure

2   that my best interest is being looked at.

3           THE COURT:  The Court is going to make a finding

4   that the defendant's counsel have capably represented the

5   defendant in the matter today and advocated his position to

6   the best of his ability.

7           All right.  Anything else we need to do?

8           All right.

9

10          **(Proceedings adjourned at 11:32 a.m.)**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     CERTIFICATE OF REPORTER

2

3             I, Tonia Harris, an Official Court Reporter for

4     the Eastern District of Virginia, do hereby certify that I

5     reported by machine shorthand, in my official capacity, the

6     proceedings had and testimony adduced upon the Competency

7     Hearing and Status Conference in the case of the **UNITED**

8     **STATES OF AMERICA versus CHRISTOPHER ROBERT SUEIRO** Criminal

9     Action No. 1:17-CR-284, in said court on the 16th day of

10    July, 2019.

11            I further certify that the foregoing 33 pages

12    constitute the official transcript of said proceedings, as

13    taken from my machine shorthand notes, my computer realtime

14    display, together with the backup tape recording of said

15    proceedings to the best of my ability.

16            In witness whereof, I have hereto subscribed my

17    name, this August 30, 2019.

18

19

20

21                                    _____
                                      Tonia M. Harris, RPR
22                                    Official Court Reporter

23

24

25

                                                                    33