PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4413

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

CHRISTOPHER ROBERT SUEIRO,

    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Rossie David Alston, Jr., District Judge. (1:17−cr−00284−RDA−1)

Argued: December 7, 2022            Decided: February 3, 2023

Before KING and RICHARDSON, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by published opinion. Senior Judge Keenan wrote the opinion, in which Judge King and Judge Richardson joined.

**ARGUED:** Eugene Victor Gorokhov, BURNHAM & GOROKHOV PLLC, Washington, D.C., for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael T. Collins, BURNHAM & GOROKHOV PLLC, Washington, D.C., for Appellant. Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

BARBARA MILANO KEENAN, Senior Circuit Judge:

Christopher Sueiro sent emails threatening to kill his former coworker. Based on these electronic communications, a detective with the City of Fairfax Police Department in Virginia obtained a warrant to search Sueiro's residence, which Sueiro shared with an unrelated adult. Upon executing the warrant, the detective recovered several computers and hard drives from Sueiro's residence and, after obtaining additional warrants to search these devices, discovered evidence of child pornography. Sueiro ultimately was charged with numerous child pornography crimes.

The district court denied Sueiro's motion to suppress evidence seized from his residence. After a jury later convicted Sueiro on all counts, the court sentenced Sueiro to a term of 240 months' imprisonment and to a life term of supervised release. As part of Sueiro's supervised release, the court imposed special conditions, including prohibitions against (1) viewing sexually explicit images of minors, (2) engaging in employment or volunteer activities with access to computers, (3) viewing adult pornography, and (4) using any video game system that would allow communication with other people.

On appeal, Sueiro argues that the initial warrant authorizing a search of his residence was overbroad and that, therefore, the district court erred when it denied his motion to suppress the evidence seized from his residence. He also contends that the court procedurally and substantively erred by imposing a 240-month term of imprisonment and the above-stated special conditions of supervised release. Upon our review, we affirm the district court's judgment with respect to the denial of Sueiro's motion to suppress, his term of imprisonment, and the special condition of supervised release that prohibits Sueiro from

viewing sexually explicit images of minors. However, we hold that the district court erred by failing to explain the other challenged special conditions of supervised release. We therefore vacate these conditions as procedurally unreasonable, and remand that portion of Sueiro's sentence to the district court for further consideration.

I.

In November 2014, Sueiro, who recently had been fired from his job as a security officer at a hotel, sent an email to his former coworker, Tiffany Olsen. Sueiro included in this four-and-a-half-page email threatening statements, such as, "You might think it's strange that I can talk so casually about killing you," and "Obliviously [sic] you knew that I *was* serious, but you didn't care until you found out that you'd be killed before I kill myself." Sueiro sent Olsen another email two days later, in which he said, "Oh, believe me, if it does come to that, I am going to . . . *enjoy* breaking you before I kill you." In that email, Sueiro also stated that he would "make [Olsen's] death soooo much more agonizingly and excruciatingly painful" if she involved her husband. The next day, police arrested Sueiro and charged him with threatening another person with death or bodily injury in violation of Virginia Code § 18.2-60.

While Sueiro was being held without bond, Detective Albert Leightley, of the City of Fairfax Police Department (the Department), went to Sueiro's home. Detective Leightley spoke with the co-occupant of Sueiro's residence, Daniel Benson, who informed Detective Leightley that Sueiro rented an upstairs bedroom from Benson and that Sueiro had a computer in his bedroom, internet access, a handgun, and a ballistic vest. Detective

Leightley also spoke with Olsen, who told him that she did not think that Sueiro owned a mobile phone.

The next day, Detective Leightley applied for a warrant to search "the property associated with" Sueiro (the initial warrant). In Detective Leightley's affidavit accompanying the warrant application, he described his experience as a twenty-year veteran of the Department, his formal training received from the federal government in computer crime investigation, Sueiro's emails to Olsen, Sueiro's arrest two days earlier, and Detective Leightley's conversation with Benson. In the "Description of Search Location," Detective Leightley listed "[t]he residence associated with" Sueiro. Finally, Detective Leightley included in the affidavit a list of items to be seized, including in relevant part "[a]ny and all mobile telephones and GPS devices," "[a]ny computers/laptops," "printers," and other devices "capable of storing data."

A magistrate judge issued the initial warrant for the search of Sueiro's residence that same day. The warrant was issued "in relation to" Sueiro's alleged offense of threatening another person with death or bodily injury under Virginia Code § 18.2-60, and permitted officers to search Sueiro's residence for "ballistic equipment, firearms, documents, and digital evidence (computers, mobile phones)." The warrant was authorized "based on the statements" in Detective Leightley's affidavit.

Detective Leightley executed the initial warrant later that day and seized several items from Sueiro's residence, including three laptop computers and three external hard drives. After seizing these items, Detective Leightley obtained a separate "forensic warrant" to search these electronic devices for evidence related to Sueiro's threats. While

4

executing the forensic warrant, Detective Leightley observed child pornography on one of the seized computers. He then obtained an additional warrant to search for evidence of possession of child pornography. The Department later referred the child pornography investigation to federal authorities.

In April 2018, a federal grand jury returned a superseding indictment charging Sueiro with receipt of child pornography, possession of child pornography, attempted receipt of child pornography, and promotion and solicitation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2), 2252(a)(4)(B), 2252(b)(1), 2252(b)(2), 2252A(a)(3)(B), and 2252A(b)(1). Following this indictment, Sueiro moved to suppress the evidence on the grounds that the initial warrant was overbroad and was insufficiently particularized. The district court denied Sueiro's motion to suppress, and later denied Sueiro's motion for reconsideration of that ruling. After a three-day trial, a jury found Sueiro guilty of all counts contained in the superseding indictment.[1]

Before Sueiro's sentencing hearing, the probation office prepared a presentence investigation report (PSR). The probation officer calculated the United States Sentencing Guidelines (guidelines) range for imprisonment at 324 to 405 months, and for supervised release from five years to a life term. Sueiro asked the court to vary downward and to impose a sentence of 60 months' imprisonment and 10 years' supervised release. He based

---

[1] Before his trial, Sueiro asked to represent himself under *Faretta v. California*, 422 U.S. 806 (1975). After the district court denied Sueiro's *Faretta* motion, Sueiro filed an interlocutory appeal to this Court. Without addressing the merits of Sueiro's claim, we dismissed Sueiro's appeal for lack of subject-matter jurisdiction. *United States v. Sueiro*, 946 F.3d 637, 642–43 (4th Cir. 2020).

this request on his "long history of mental illness and trauma," the nature of his offense, which he described as less serious than other offenses against children, and the need to avoid unwarranted sentencing disparities. Relevant to this appeal, Sueiro also objected to the imprisonment guidelines range as being "absurdly high compared to far worse crimes."

After concluding that one identified sentencing enhancement did not apply, the district court recalculated Sueiro's guidelines range at 262 to 327 months' imprisonment and sentenced him to serve a below-guidelines term of 240 months' imprisonment. The court also sentenced Sueiro to a life term of supervised release and imposed several special conditions, including prohibitions on "purchas[ing], possess[ing], or view[ing] any sexually explicit material or images using young juvenile models under the age of 18 in any format" (the ban on viewing juvenile models), "engag[ing] in employment or volunteer services that allow [Sueiro] access to computers or minors" (the computer ban), "utiliz[ing] any sex-related adult telephone services, websites, or electronic bulletin boards" (the adult pornography ban), and "possess[ing] or utiliz[ing] any video gaming system, console, and other such device which would enable contact and/or the sharing of data with other individuals known or unknown to the defendant" (the video game ban). Sueiro timely filed the present appeal challenging both the district court's denial of his motion to suppress and the procedural and substantive reasonableness of his sentence.

II.

On appeal, Sueiro argues that the initial warrant was unconstitutionally overbroad and, thus, he maintains that all the evidence seized from his home should have been

suppressed. Also, challenging his sentence, Sueiro asserts that the court erred both procedurally and substantively when it imposed without sufficient explanation a 240-month term of imprisonment and certain lifetime special conditions of supervised release. We address each argument in turn.

A.

We first consider Sueiro's challenge to the breadth of the initial warrant, which permitted the officers to search for and seize "ballistic equipment, firearms, documents, and digital evidence (computers, mobile phones)." We review de novo the district court's legal conclusions concerning the motion to suppress, and we review the court's factual findings for clear error. *United States v. Seerden*, 916 F.3d 360, 365 (4th Cir. 2019). When, as here, the district court has denied a motion to suppress, we consider the evidence in the light most favorable to the government. *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013).

Under the Fourth Amendment, a warrant must be supported by probable cause. U.S. Const. amend. IV. Although a warrant may not be "broader than the probable cause on which it is based," *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006) (quoting *United States v. Zimmerman,* 277 F.3d 426, 432 (3d Cir. 2002)), probable cause is "not a high bar" and requires only a "fair probability" that "contraband or evidence of a crime will be found in a particular place," *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (first quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018), and then quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). We afford great deference to a judicial officer who issues a search warrant and ask only "whether the judicial officer had

7

a 'substantial basis' for finding probable cause." *United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020) (quoting *United States v. Jones*, 942 F.3d 634, 638 (4th Cir. 2019)).

Sueiro raises three points to support his contention that the initial warrant was overbroad. First, he argues that the warrant identified a residence occupied by more than one person and permitted the seizure of electronic devices regardless whether Sueiro or someone else owned those devices. Next, relying on the D.C. Circuit's decision in *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), and Detective Leightley's statement that "the only thing [Detective Leightley] knew" was that Sueiro owned a computer, Sueiro argues that the affidavit did not contain information indicating that Sueiro owned a cell phone or that the other items sought would be found at Sueiro's residence. Finally, Sueiro argues that there was no connection between the alleged crime and certain items sought, including cell phones, GPS devices, printers, and hard drives. We disagree with Sueiro's arguments.

When we consider both the language of the initial warrant and Detective Leightley's supporting affidavit, we conclude that the initial warrant was not overbroad. We previously have observed that when a warrant states a charged offense, such reference to the crime effectively narrows the description of the items to be seized. *Blakeney*, 949 F.3d at 863 n.2; *United States v. Cobb*, 970 F.3d 319, 328 (4th Cir. 2020), *as amended* (Aug. 17, 2020). Here, the magistrate judge issued the warrant in relation to a specific illegal activity for which Sueiro had been arrested, namely, communicating threats of death or bodily injury, thereby restricting the evidence to be seized as that relating to the crime charged. *See Andresen v. Maryland*, 427 U.S. 463, 480 (1976).

The scope of the initial warrant further was narrowed when it incorporated by reference Detective Leightley's affidavit. *See Hurwitz*, 459 F.3d at 471. In that affidavit, Detective Leightley referenced Sueiro's involvement in the alleged crime, that Sueiro rented an upstairs bedroom of Benson's residence, and that Detective Leightley sought to search only "the *residence associated with* [Sueiro]" and "the *property associated with* [Sueiro]."

A judicial officer need not demonstrate absolute certainty that devices containing evidence of a crime will be present in a defendant's home. Instead, the officer evaluates the "totality of the circumstances" to determine whether there is a "*substantial likelihood*" that evidence of a crime will be found in the place to be searched. *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011) (emphasis added). In conducting this "practical, commonsense determination," the officer may consider "the normal inferences of where one would likely keep" the evidence sought. *United States v. Orozco*, 41 F.4th 403, 409 (4th Cir. 2022) (quoting *Allen*, 631 F.3d at 173); *see United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (adopting the "normal inferences" test when considering nexus between place to be searched and where "one would likely keep" item to be seized).

Here, as described above, the affidavit contained information showing that Sueiro had committed the alleged crime by sending emails in the days before Detective Leightley submitted the affidavit, that Sueiro rented a bedroom in the residence to be searched, and that Sueiro owned a computer that he kept in his bedroom. Because Sueiro had been detained without bond when Detective Leightley submitted the affidavit, it was substantially likely that Sueiro's computer and any related devices would have remained

9

exactly where one would expect them to be found, namely, in his place of residence. Thus, we conclude that the initial warrant was appropriately confined in scope and established a sufficient connection between the alleged crime and the items sought. *See Bosyk*, 933 F.3d at 325–26 (holding that it was "fairly probable" that evidence of a crime committed electronically would be found on "computers or other devices" at the defendant's home).

Although Olsen told Detective Leightley that she did not think that Sueiro owned a mobile phone, that statement was not presented for the magistrate judge's consideration.[2] Moreover, we do not view as overbroad the inclusion of "[m]obile [p]hones" in a warrant when Sueiro's alleged crime of sending threats via email required the use of an electronic device and, in 2014, "more than 90% of American adults . . . own[ed] a cell phone." *Riley v. California*, 573 U.S. 373, 395 (2014).

The factual circumstance that the crime involved an electronic communication distinguishes the present case from the evidence before the D.C. Circuit in *Griffith*, 867 F.3d 1265. There, police suspected that the defendant had driven a getaway car in connection with a gang-related homicide that had occurred more than one year earlier. *Id.* at 1268. On that basis, the police obtained a warrant to search for "all electronic devices," including cell phones, in the apartment the defendant shared with his girlfriend. *Id.* at 1269. The D.C. Circuit held that the warrant was overbroad, reasoning that the affidavit

---

[2] We note that, although Detective Leightley did not include this statement in the application for the warrant, Sueiro does not bring a *Franks* challenge on appeal. *See United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016) (explaining that the *Franks* test also applies "when an agent *omits* relevant facts from the affidavit").

supporting the warrant provided "no reason" to suspect that the defendant possessed any electronic devices or that any would be found in the apartment. *Id.* at 1272, 1277. With respect to the authorization to search for the defendant's cell phone, the court stated that "the assumption that most people own a cell phone would not automatically justify an open-ended warrant to search a home anytime officers seek a person's phone." *Id.* at 1273.

Like the D.C. Circuit, we do not accept the proposition that the ubiquity of cell phones, *standing alone*, can justify a sweeping search for such a device. But, in contrast to the suspected getaway driver in *Griffith*, Sueiro allegedly committed the crime using an electronic communications device just days before the magistrate judge issued the initial warrant. *See id.* at 1268; *see also Gates*, 462 U.S. at 232 ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts."). Because these crucial facts materially distinguish the present case from those found in *Griffith*, we are not persuaded by Sueiro's reliance on that decision.

Construing the initial warrant in a "commonsense and realistic" manner, we conclude that the warrant was logically limited in scope and adequately protected against any "exploratory rummaging" by an executing officer. *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (quoting *Andresen*, 427 U.S. at 480). We thus affirm the district court's denial of Sueiro's motion to suppress.

B.

We next consider Sueiro's challenges to his sentence, namely, that both the 240-month term of imprisonment and certain special lifetime conditions of supervised

11

release were procedurally and substantively unreasonable. We begin with his challenge to the procedural reasonableness of his term of imprisonment.

i.

Sueiro argues that the district court procedurally erred when it failed to consider two of his non-frivolous arguments at sentencing: (1) that a long sentence would create an unwarranted sentencing disparity between Sueiro and other defendants convicted of comparable crimes; and (2) that the district court should not consider the sentencing guidelines range because the child pornography sentencing enhancements result in a range "indistinguishable" from the guidelines ranges for more egregious crimes. We disagree with Sueiro's arguments.

In assessing the procedural reasonableness of Sueiro's term of imprisonment, we review the court's factual findings for clear error and its legal conclusions de novo. *United States v. Strieper*, 666 F.3d 288, 292 (4th Cir. 2012). A sentence is procedurally unreasonable when the district court "(1) "impos[es] 'a sentence based on clearly erroneous facts;' (2) fail[s] to explain the sentence adequately; or (3) fail[s] to address the defendant's nonfrivolous arguments." *See United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) (alterations added) (quoting *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)).

Sueiro correctly states that a sentencing court must consider the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). But here, the district court "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities" when it carefully reviewed and calculated Sueiro's guidelines range at the sentencing hearing. *Gall v. United States*, 552 U.S. 38, 54 (2007) (explaining that

"avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges").

The district court was not required at sentencing to examine the records of various other people Sueiro identified who had been convicted of similar or more serious crimes. The requirement of procedural reasonableness does not obligate a trial court to engage in case-by-case comparisons of sentences imposed in cases unconnected to the case before the court.³ *See United States v. Arbaugh*, 951 F.3d 167, 175 (4th Cir. 2020); *United States v. Friend*, 2 F.4th 369, 382–83 (4th Cir. 2021) ("Courts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized." (quoting *United States v. Rivera-Santana*, 668 F.3d 95, 105 (4th Cir. 2012))). We thus conclude that the district court did not procedurally err in its consideration of unwarranted sentencing disparities under § 3553(a)(6). *See Gall*, 552 U.S. at 50 (explaining that a district court's justification for a sentence must "allow for meaningful appellate review" and "promote the perception of fair sentencing").

---

³ Nor was the district court required to evaluate regional sentencing statistics for other people that Sueiro argued were "charged with similar conduct," namely, the mean and median sentences for individuals convicted of child pornography crimes in the Eastern District of Virginia. When Sueiro presented these regional statistics to the district court, he not only attempted to sidestep the nationwide mandate of § 3553(a)(6), but he also failed to provide any meaningful context for the data. *See United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) ("The purpose of the sentencing guidelines is 'to eliminate disparities among sentences nationwide.'" (quoting *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008))); *cf. United States v. Abed*, 3 F.4th 104, 177 (4th Cir. 2021) (cautioning against reliance on statistics, and explaining that such information "hardly presents an apples-to-apples-comparison").

We also conclude that the district court adequately addressed Sueiro's argument that the guidelines range should not apply. At the sentencing hearing, the court restated Sueiro's argument that the guidelines range "is absurdly high compared to far worse crimes," and explained that, "[c]onsidering these arguments, it bears repeating that in accordance with the preceden[t], this Court should consult both the guidelines and the sentencing factors set forth in [§] 3553(a) to determine the defendant's appropriate sentence." The court then reviewed the sentencing guidelines range from the PSR and, after addressing Sueiro's objections, held that several sentencing enhancements applied. The court ultimately recalculated Sueiro's guidelines range at 262 to 327 months' imprisonment, and imposed a below-guidelines sentence. Although the court did not articulate a lengthy analysis of Sueiro's policy argument, we have no difficulty concluding from the full context of the court's explanation that the court both "considered the argument and rejected it." *United States v. Lester*, 985 F.3d 377, 388 (4th Cir. 2021). We thus hold that the court did not procedurally err regarding its consideration of Sueiro's term of imprisonment.

ii.

Sueiro next contends that the court substantively erred when it imposed 240-months' imprisonment "on a severely mentally ill individual who never directly harmed anyone." We disagree.

We review the substantive reasonableness of Sueiro's sentence for abuse of discretion. *Lewis*, 958 F.3d at 243. And if the district court imposes a below-guidelines

14

sentence, we may "presume that [the] chosen sentence is substantively reasonable." *Friend*, 2 F.4th at 382 (quoting *United States v. Avila*, 770 F.3d 1100, 1103 (4th Cir. 2014)).

Here, the district court expressly acknowledged the "voluminous evidence" contained in Sueiro's mental health records, concluded that Sueiro faced significant, untreated mental health challenges, and addressed those challenges in the context of both the applicability of a sentencing enhancement and the court's analysis of the sentencing factors under § 3553(a).  However, the court also recognized the seriousness of Sueiro's crimes and the need for restitution.  Referencing several victim impact statements, the court described the "cavernous pain" that Sueiro had "inflicted upon some of the most vulnerable members of our society."  After outlining these and several other "central" § 3553(a) factors, the court ultimately imposed concurrent 240-month sentences for each count.  We conclude that the court did not abuse its discretion in conducting this analysis, in weighing the § 3553(a) factors, and in imposing this below-guidelines sentence.

iii.

We next turn to Sueiro's argument that the district court procedurally erred when it imposed without explanation four lifetime special conditions of supervised release, namely, the ban on viewing juvenile models, the computer ban, the adult pornography ban, and the video game ban.[4]  Although a sentencing court need not "robotically tick through"

---

[4] The government argues that Sueiro did not object to the conditions of supervised release before the district court and that, therefore, we must review Sueiro's challenge to the procedural reasonableness of these conditions for plain error.  However, because we would reach the same conclusions under either plain error or abuse of discretion review, we need not address this contention.

15

an explanation for each supervised release condition, the court must offer enough of an explanation "'to satisfy' us that [it] . . . 'considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision-making authority.'" *United States v. Boyd*, 5 F.4th 550, 559 (4th Cir. 2021) (omission and second alteration added) (quoting *Arbaugh*, 951 F.3d at 174).

In some cases, the reason for a special condition is "so self-evident and unassailable" that remand is not necessary. *United States v. McMiller*, 954 F.3d 670, 677 (4th Cir. 2020). Here, the obvious connection between Sueiro's child pornography crimes, which the court described at sentencing, and the ban on viewing juvenile models, which prohibits Sueiro from purchasing, possessing, or viewing any sexually explicit material or images that depict minors in any format, requires no particularized explanation. We thus conclude that the district court adequately explained the basis for this supervised release condition when it addressed the § 3553(a) factors. *See United States v. Williams*, 5 F.4th 500, 509 (4th Cir. 2021).

The lifetime computer, adult pornography, and video game bans, however, are not "so self-evident and unassailable," and each imposes a significant deprivation of liberty that will last for the rest of Sueiro's life. *See McMiller*, 954 F.3d at 677. The computer ban, for example, prohibits Sueiro from getting a job that would "allow him . . . access to computers," thus potentially rendering Sueiro unemployable in our modern world. *Cf. Arbaugh*, 951 F.3d at 179 ("[T]he district court had to explain what facts led to its decision to impose the computer-related special conditions on this defendant.").

The adult pornography ban prohibits Sueiro from accessing legal material that generally enjoys First Amendment protection. *United States v. Van Donk*, 961 F.3d 314, 323 (4th Cir. 2020).[5] And the video game ban prevents Sueiro from using any video game console that would allow him to communicate with anyone, irrespective who those persons may be or whether he actually uses such a communication feature.

Although the district court addressed the § 3553(a) factors at sentencing, the court's imposition of these three special conditions required that the court provide some particularized explanation to support them. While there may be sufficient support in the record for at least some of them, "we are not permitted to substitute our assessment of the record for the district court's obligation to explain its rationale in the first instance." *Arbaugh*, 951 F.3d at 178; *see United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009) (explaining that the appellate court must have enough information about the justification for the sentence to conduct a "meaningful review" (quoting *United States v. Henry*, 545 F.3d 367, 386 (6th Cir. 2008))). We thus vacate the computer, adult pornography, and video game bans and remand those special conditions to the district court for further explanation.

iv.

---

[5] We have upheld an adult pornography ban when the condition was based on a pornography addiction that led, or an expert found could lead, to viewing child pornography. *See United States v. Arce*, 49 F.4th 382, 397 (4th Cir. 2022); *Van Donk*, 961 F.3d at 323 (clarifying that the First Amendment is not relevant "in the context of a supervised-release condition that satisfies [18 U.S.C.] § 3583(d)'s requirements."). Here, however, the district court did not explain whether Sueiro suffers from such an addiction.

Because we conclude that the district court's imposition of the computer, adult pornography, and video game bans was procedurally unreasonable, we address the substantive reasonableness only of the ban on viewing juvenile models. *See Carter*, 564 F.3d at 328. We review the substantive reasonableness of this condition for abuse of discretion. *Lewis*, 958 F.3d at 243.

Under 18 U.S.C. § 3583(d), a special condition of supervised release must be "(1) reasonably related to the statutory goals of deterrence, protection of the public, and rehabilitation; (2) no greater a deprivation of liberty than is reasonably necessary to achieve those statutory goals; and (3) consistent with any relevant policy statements issued by the Sentencing Commission." *United States v. Comer*, 5 F.4th 535, 545 (4th Cir. 2021) (quoting *McMiller*, 954 F.3d at 676). The reasonably necessary prong requires the court to select "the least restrictive alternative" to achieve the statutory purposes. *United States v. Ellis*, 984 F.3d 1092, 1104 (4th Cir. 2021).

The ban on viewing juvenile models targets the exact type of conduct for which Sueiro was convicted, namely, viewing sexually explicit material involving minors. In addition, the "general rule that probationers may not be punished for inadvertent violations" narrows the application of this condition to only intentional conduct. *Van Donk*, 961 F.3d at 324. Because the district court explained that Sueiro's sentence served, in part, to deter criminal conduct and protect the public from further crimes, and because this condition bears a direct relationship to Sueiro's crimes of conviction, we conclude that the district court did not abuse its discretion when it imposed this special condition.

III.

For these reasons, we affirm the district court's denial of Sueiro's motion to suppress, affirm the court's sentence of imprisonment, affirm the court's imposition of the special condition regarding juvenile models, and vacate the court's judgment regarding the three remaining special conditions of supervised release that Sueiro challenges in this appeal. We remand to the district court for resentencing the special conditions of supervised release relating to the computer, adult pornography, and video game bans.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*