IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)   Criminal Action No. 1:17-cr-284 (RDA)<br>)<br>CHRISTOPHER ROBERT SUEIRO,  )<br>)<br>Defendant.  ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court upon remand from the United States Court of Appeals for the Fourth Circuit for additional proceedings. Dkt. Nos. 324-26; 329. The Court has considered the parties' positions on the Supervised Release Conditions (Dkt. Nos. 331; 333), the evidence and arguments leading up to and at Defendant's sentencing (Dkt. Nos. 289; 291-92; 320), and the evidence adduced at trial (Dkt. Nos. 314-19) (trial transcript). Below, the Court has more carefully articulated the justification for the imposition of the Supervised Release conditions that the Fourth Circuit vacated on February 3, 2023.

I. BACKGROUND

In November of 2014, Defendant sent threatening emails to his coworker, Tiffany Olsen. *United States v. Sueiro*, 59 F.4th 132, 137 (4th Cir. 2023). He first sent a four-and-a-half-page email that included various threatening statements discussing his thoughts about killing Ms. Olsen. *Id*. He then sent a second email with similar threats to her two days later. *Id*. The police later arrested Sueiro, charging him under a Virginia law prohibiting individuals from threatening others with death or bodily injury. *Id. See also* Virginia Code § 18.2-60 (Virginia Code provision).

The police further investigated Sueiro. They went to his home and spoke to his roommate, who told the police that Sueiro was his tenant and had "a computer, . . . internet access, a handgun,

and a ballistic vest." *Id.* They also spoke with Ms. Olsen. *Id.* The police obtained a warrant, searched Sueiro's home, and seized various items, including "three laptop computers and three external hard drives." *Id.* The police subsequently obtained a "separate forensic warrant" that led to an officer observing child pornography on one of the seized computers. *Id.* The police procured another warrant to "search for evidence of possession of child pornography." *Id.* at 138.

Eventually, the government charged Sueiro, bringing an indictment related to the child pornography found on his devices. The government's charges were finalized in April of 2018 when a federal grand jury "returned a superseding indictment charging Sueiro with receipt of child pornography, possession of child pornography, attempted receipt of child pornography, and promotion and solicitation of child pornography . . . ." *Id.* The case proceeded to trial in February and March of 2021, and the jury found Sueiro guilty on all counts in the superseding indictment. *Id.*

This Court sentenced Defendant on August 4, 2021. Dkt. 297. The guidelines were properly assessed at 262 to 327 months, and the Court sentenced Sueiro to 240 months in prison, with lifetime supervised release, on each of the counts (to be served concurrently). *Id.* This Court also imposed various conditions on Defendant's supervised release, including, *inter alia*:

> (6) Defendant shall not engage in employment or volunteer services that allow [him] access to computers or minors.
>
> . . .
>
> (10) The [D]efendant shall not utilize any sex-related adult telephone services, websites, or electronic bulletin boards . . .
>
> (12) [T]he [D]efendant shall not possess or utilize any video gaming system, console, or other such device which would enable contact and/or the sharing of data with other individuals known or unknown to the [D]efendant.

Dkt. 301 at 4. After Sueiro appealed multiple aspects of his conviction and sentence, the Fourth Circuit affirmed on all but three issues, each of which related to the special conditions of his

supervised release, which it referred to as the "computer, adult pornography, and video game bans[,]" 59 F.4th at 145, *i.e.* special conditions six, ten, and twelve, as recounted above. The Fourth Circuit's Mandate was then issued on April 11, 2023. Afterwards, this Court asked for the parties' positions on those conditions, Dkt. 330, which the parties provided, Dkt. Nos. 331; 333. Defendant waived his right to a hearing on those special conditions, Dkt. 336, and the parties agreed that these issues could be resolved on the papers, Dkt. 334. Accordingly, the issues related to Defendant's supervised release conditions are ripe for review.

## II. LEGAL ANALYSIS

First and foremost, this Court must consider its task on remand. Following the "mandate rule," this Court must "carry out the mandate" of the Fourth Circuit, meaning that this Court must comply "with the dictates of [the Fourth Circuit]." *United States v. Susi*, 674 F.3d 278, 283 (4th Cir. 2012) (in part quoting *United States. v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993)) (cleaned up). But "to the extent that the mandate of the appellate court instructs or permits reconsideration of sentencing issues on remand, [this Court] may consider the issue de novo, entertaining 'any relevant evidence on that issue that it could have heard at the first hearing.'" *Bell*, 5 F.3d at 67 (quoting *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992)).

In this case, the Fourth Circuit's Mandate, Dkt. 329, effectuated its Judgment, which "remanded the case . . . for further proceedings consistent with the [Fourth Circuit's] decision[,]" Dkt. 325. And the Fourth Circuit's decision merely vacated and remanded the three conditions of lifetime supervised release for "further explanation." *Sueiro*, 59 F.4th at 144. The Court provides such explanation below. In this regard, the Court is ever-sensitive to the Constitutional rights the Defendant still enjoys as a convicted felon but also is ever-mindful of the predatory nature of the Defendant's convicted conduct. This conduct was particularly directed at those who are most vulnerable in our society—children.

3

A. The Computer Access Restriction

The first supervised release condition at issue is special condition six, which the Fourth Circuit referred to as the "computer ban." That condition forbids Defendant from "engag[ing] in employment or volunteer services that allow him[] access to computers or minors." Dkt. 301 at 4. In reviewing that special condition, the Fourth Circuit noted that the computer restriction would prohibit "Sueiro from getting a job that would allow him access to computers, thus potentially rendering Sueiro unemployable in our modern world." *Sueiro*, 59 F.4th at 143-44 (quoting *United States v. Arbaugh*, 951 F.3d 167, 179 (4th Cir. 2020)) (cleaned up).

When a defendant commits a crime that bears a nexus to computers, restrictions on computer use upon supervised release are appropriate. Notably, the Fourth Circuit has upheld a special condition that forbid a defendant from "possess[ing] or us[ing] any computer which is connected or has the capacity to be connected to any network" when the defendant had pleaded "guilty to transporting and shipping images of child pornography contained on computer diskettes and stored on the hard drive of [defendant's] computer." *United States v. Granger*, 117 F. App'x 247, 248 (4th Cir. 2004). And, following that principle, district courts in the Fourth Circuit have almost routinely imposed similar restrictions for defendants convicted of crimes involving computers. *See, e.g.*, *United States v. Ponzini*, No. 3:2-cr-423, 2007 WL 6097267, at *2-4 (E.D. Va. Dec. 4, 2007) (rejecting request from defendant convicted of child pornography to modify special conditions preventing him from possessing or using a computer "at any location" and from "own[ing] or hav[ing] a computer in his residence or place of employment"); *see also Maillet v. United States*, No. 1:17-cv-244, 1:14-cr-4, 2020 WL 1914924, at *9 (W.D.N.C. April 20, 2020) (citing *Granger* and noting that courts have "routinely upheld" limitations on computer usage for sex offenders).

Computer restrictions are particularly salient for defendants convicted of child pornography activity connected to the Internet. In fact, the Sentencing Guidelines itself recommend that courts impose a "condition limiting the use of a computer or an interactive computer service" if the defendant used such items in perpetrating a sex offense. U.S.S.G. § 5D1.3(d)(7)(B). That is why "[s]pecial conditions involving limitations on computer use or required computer monitoring have been upheld when the defendant has a history of using a computer or the internet to commit present or prior crimes." *United States v. Mixell*, 806 F. App'x 180, 185 (4th Cir. 2020).[1]

Expansive restrictions on computer usage are not wholly out of bounds for child pornography defendants. In *United States v. Hamilton*, 986 F.3d 413 (4th Cir. 2021), the Fourth

---

[1] The Fourth Circuit is not alone in recognizing the propriety of computer or Internet restrictions on certain defendants convicted of child pornography offenses when those crimes involved a computer. In fact, every single circuit has upheld such restrictions when the particular facts of the case indicated it was warranted. *See, e.g.*, *United States v. Egli*, 13 F.4th 1139, 1146-49 (10th Cir. 2021) (affirming absolute Internet ban as condition of supervised release); *United States v. Greenberg*, No. 20-4318, 2021 WL 5373355, at *3 (6th Cir. Nov. 18, 2021) (upholding condition that prohibited defendant from accessing the internet); *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017) (upholding condition that prohibited defendant from using a computer or having access "to any online service"); *United States v. Notman*, 831 F.3d 1084, 1089 (8th Cir. 2016) (affirming restriction on possession of a computer "and other related devices" as condition of supervised release); *United States v. Velez-Luciano*, 814 F.3d 553, 560 (1st Cir. 2016) (upholding special condition that "preclude[d] [defendant's] internet access without a probation officer's prior approval"); *United States v. Carpenter*, 803 F.3d 1224, 1239 (11th Cir. 2015) ("[O]ur cases have uniformly upheld conditions prohibiting defendants convicted of sex offenses from accessing a computer or the Internet for the duration of their supervised release."); *United States v. Miller*, 665 F.3d 114, 126-34 (5th Cir. 2011) (upholding computer restriction for 25-year term of supervised release); *United States v. Angle*, 598 F.3d 352, 361 (7th Cir. 2010) (affirming condition that prohibited defendant from having "personal access to computer Internet services"); *United States v. Thielemann*, 575 F.3d 265, 278 (3d Cir. 2009) (upholding computer restriction for term of supervised release); *United States v. Johnson*, 446 F.3d 272, 281-83 (2d Cir. 2006) (upholding condition that forbid defendant from using computer with Internet capabilities absent approval from the district court); *United States v. Rearden*, 349 F.3d 608, 620-21 (9th Cir. 2003) (upholding computer restriction for term of supervised release).

Circuit explained the sorts of situations where a "total Internet ban" is inappropriate.[2] In doing so—and subsequently *upholding* an Internet restriction—it set the contours for when an expansive ban on computer use may be within a district court's discretion. Specifically, the Fourth Circuit identified two case-specific "threads" that render a sweeping computer ban unreasonable: (1) when the facts do not indicate that the defendant engaged in criminality online; or (2) when there is no indication the defendant had "contact with a minor." *Hamilton*, 986 F.3d at 421-22. Impliedly, that means that a broader computer restriction may be justified for a defendant who engaged in criminality online or had contact with minors online. Since *Hamilton*, the Fourth Circuit has been explicit, stating that three factors are relevant to determining whether "broad restrictions on internet access" are appropriate: "(1) whether 'the defendant used the internet in [his] underlying offense'; (2) whether 'the defendant had a history of improperly using the internet to engage in illegal conduct'; and (3) whether 'particular and identifiable characteristics of the defendant suggested that such a restriction was warranted.'" *United States v. Comer*, 5 F.4th 535, 546 (4th Cir. 2021) (quoting *Hamilton*, 986 F.3d at 421-22 and applying the factors set forth in *United States v. Perazza-Mercado*, 553 F.3d 65, 70 (1st Cir. 2009)).[3] Here, each factor weighs heavily in favor of a muscular restriction on Sueiro's computer usage upon release.

---

[2] To be clear, the Court in *Hamilton* (and many other courts reviewing similar conditions) reviewed an *Internet* ban, not a *computer* ban, which is the supervised release condition at issue here. 986 F.3d at 421. In today's world, though, a computer is basically only as useful as far as it enables its user to access the Internet. If anything, an Internet ban—which would cover devices *aside* from computers—is far more expansive than a computer ban. And so the Court finds it appropriate to rely on case law evaluating Internet bans.

[3] While the *Comer* Court approvingly cited the factors from *Perazza-Mercado*, there is a crucial difference. In *Comer,* the Fourth Circuit noted that it considers *all three* factors when deciding whether a special condition of release that limits Internet access is appropriate. *See* 5 F.4th at 546 (stating the relevant law and noting that the court considers *Perazza-Mercado* Factors 1, 2, *and* 3). But under First Circuit case law, the satisfaction of a *single* factor is sufficient to justify a broad restriction of Internet/computer access. *See United States v. Aquino-Florenciani*, 894 F.3d 4, 7 (1st Cir. 2018) (only considering the first two *Perazza-Mercado* factors and noting

First, there was a plethora of evidence at trial regarding Sueiro's use of the computer to carry out his various crimes. One of the government's witnesses, Mr. Albert Leightly, a detective with the City of Fairfax Police Department, explained how the government seized three computers and four external hard drives in executing a search warrant on Sueiro's residence. Dkt. 317 at 315:1-324:1. Sueiro admitted to using those devices, *id.* at 324:2-326:13, which were extensively connected to the crimes of which he was convicted. For example, one of his computers contained a document titled "Where to find kiddie porn message.doc" which contained, *inter alia*, instructions about how to find "pictures[] and even videos of little boys[,]" *id.* at 379:5-380, and explained that the method that was set forth in the document was the "only way [the writer of the document had] ever found to actually have find [sic] lots and lots of great kiddie porn," *id.* at 380:21-25. Moreover, Mr. Leightly confirmed that he found "evidence of videos and images of minors engaged in sexually explicit conduct" on the devices seized from Sueiro's residence. *Id.* at 383: 7-12. For instance, he found on the computers a "series" of images depicting adolescent boys, *e.g.*, *id.* at 389:20-390:24, explicit "preteen hardcore videos" that involved children as young as eight years old, *e.g. id.* at 391:4-392:396:7, and other evidence that Sueiro had downloaded child pornography, *e.g. id.* at 403:5-409:17. *See also* Government's Exs. 315-325 (samples of child pornography videos found on computer seized from Sueiro); Dkt. 317 at 417:9-426:15 (video exhibits of child pornography found computer seized from Sueiro).[4]

Second, Sueiro also had a history of using the computer to procure and exchange child pornography. His online activity exchanging child pornography started in 2011, *see, e.g.*, Gov't

---

that if a "single factor" is met, restrictions on internet access are justified). In any event, for the reasons explained herein, each of the three factors weigh in favor of the computer restriction fashioned by the Court here.

[4] In this disposition, the Court does not recount each and every piece of computer evidence related to Defendant's crimes, of which there are many.

Ex. 327 (document indicating that Sueiro had been downloading child pornography from WinMX and was seeking to continue to do the same as early as October of 2011), extended into 2012, *see, e.g.*, Gov't Ex. 314 (showing that Sueiro downloaded child pornography in October 2012), and further into 2013 and 2014, *see, e.g.*, Gov't Ex. 324 ("Where to find kiddie porn message.doc" document, created in May of 2013); Gov't Ex. 701 (document indicating that Sueiro created his "BoyVids" account on September 9, 2014). That 4-year period of utilizing the computer to access child pornography certainly indicates that he had a "history of improperly using the internet to engage in illegal conduct." *See Comer*, 5 F.4th at 546 (affirming a broad restriction of social networking accounts because defendant had a "history of using social networks for illegal conduct," including while on supervised release); *Aquino-Florenciani*, 894 F.3d at 7 (holding that the second *Perazza-Mercado* factor was satisfied when defendant downloaded child pornography for "at least a year"). *Compare Perazza-Mercado*, 553 F.3d at 70 (expansive Internet restriction inappropriate for defendant who did not have a "history of computer misuse").

Finally, Sueiro has "particular and identifiable characteristics" that make a sweeping computer restriction appropriate. *Hamilton*, 986 F.3d at 422. His flouting of this Court's orders and instructions, the standards at trial, and the Court's rulings made at trial exemplifies his defiant nature. *See, e.g.*, Dkt. 315 at 2:12-21:13 (exchange between the Court and counsel for the Defendant and government addressing Defendant's various outbursts at beginning of trial); Dkt. 314 at 113:18-115:15 (Defendant defying court instructions at the end of trial). Such "willful disobedience of court orders suggests that a more narrowly tailored ban is not sufficient to meet the statutory goal of 'protecting the public from further crimes of the defendant.'" *Hamilton*, 986 F.3d at 422 (citing 18 U.S.C. § 3553(a)(2)(C)) (cleaned up); *see also Comer*, 5 F.4th at 546 (expansive social media restriction justified because of defendant's repeated violations of her conditions of bond).

Because all three of the *Perazza-Mercado* factors are present, a meaningful restriction on Sueiro's computer access is necessary here. However, the Court appreciates the Fourth Circuit's concern that a total computer ban could essentially render "Sueiro unemployable in our modern world." *Sueiro*, 59 F.4th at 143. To strike that necessary balance, the Court will modify special condition six to allow for computer access for Sueiro with this Court's approval, upon notification from the Probation Office. That narrow exception, which does not completely ban Sueiro from using computers, is in line with various other conditions that the Fourth Circuit has upheld. *See, e.g.*, *Comer*, 5 F.4th at 540 (upholding supervised release condition that prohibited defendant from having social networking accounts without approval from probation); *Hamilton*, 986 F.3d at 421 (similar). *See also United States v. Arce*, 29 F.4th 382, 396-97 (4th Cir. 2022) (noting that a complete internet ban is "almost always excessive" if a child pornography defendant did not have "actual contact with the victim"); *supra* cases cited n.1 (upheld conditions mostly include an exception if defendant obtained prior approval).

B. The Adult Pornography Restriction

The second supervised release condition at issue is special condition ten, which the Fourth Circuit referred to as the "adult pornography ban." That condition reads: "The [D]efendant shall not utilize any sex-related adult telephone services, websites, or electronic bulletin boards. The [D]efendant shall submit any records requested by the probation officer to verify compliance with this condition including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills." Dkt. 301 at 4. In reviewing this Court's sentence, the Fourth Circuit noted that "the adult pornography ban prohibits Sueiro from accessing legal material that generally enjoys First Amendment protection." *Sueiro*, 59 F.4th at 144.

The Fourth Circuit has permitted adult pornography bans for child pornographers in certain situations. In particular, it has held that a "ban on access to pornography is acceptable where a

'restriction on sexually stimulating material is necessary to treat the defendant's addiction and to deter him from future crimes.'" *Arce*, 49 F.4th 382, 397 (quoting *United States v. Van Donk*, 961 F.3d 314, 323 (4th Cir. 2020)) (cleaned up). Appropriately, this case did not focus on Sueiro's general addiction to pornography, and accordingly there is nothing in the record from trial or sentencing indicating that Sueiro is addicted to pornography.

However, nothing in Fourth Circuit case law instructs that adult pornography restrictions upon supervised release are *only* permissible if a defendant suffers from addiction. And other circuits have not circumscribed the situations where an adult pornography restriction is appropriate in such a way. For example, the Seventh Circuit has indicated that an adult pornography-ban is appropriate "where it is reasonably necessary to assist the defendant's rehabilitation or to protect the public." *United States v. Canfield*, 893 F.3d 491, 496 (7th Cir. 2018) (cleaned up); *accord United States v. Zobel*, 696 F.3d 558, 576 (6th Cir. 2012). Similarly, the Eighth Circuit has held that broad adult pornography bans may be justified when they are "obviously relevant" to "the defendant's history and characteristics." *United States v. Deatherage*, 682 F.3d 755, 764 (8th Cir. 2012).

Here, because of Sueiro's history and characteristics, an adult electronic pornography prohibition is "obviously relevant" and thus reasonably necessary to protect the public. The Presentence Report—which incorporated two psychiatric reports, one conducted in 2016 and another in 2018—detailed the wide-ranging and particularized trauma Sueiro experienced as a child into early adulthood. *See generally* Dkt. 306 at 24-32.[5] *See also* Dkt. 291 at 6-13 (Defendant's Sentencing Position, detailing his trauma). Such trauma signifies that he may be more likely to suffer from sexual addiction. *See* Patrick J. Carnes, et al., *PATHOS: A brief*

---

[5] The Court does not recount the specifics of the PSR, which was filed under seal.

*screening application for assessing sexual addiction*, 6 J. ADDICT. MED. at 29-34 (Mar. 2012) ("Considerable research has examined the etiology of sexual addiction and identified common contributors, including a history of trauma . . . ."); Yasuhiro Kotera and Christine Rhodes, *Pathways to sex addiction: Relationships with adverse childhood experience, attachment, narcissism, self-compassion and motivation in a gender-balanced sample*, SEXUAL ADDICTION & COMPULSIVITY at 4 ("Etiological research into sex addiction indicates that adverse childhood experience, namely trauma, may lead to a later diagnosis of sex addiction . . . ."). And studies show there is a correlation between an adult pornography addiction and an interest in child pornography. *See, e.g.*, Michael Elbert, Alan Drury, and Matt DeLisi, *Child Pornography Possession/Receipt Offenders: Developing a Forensic Profile*, PSYCHIATRY, PSYCHOLOGY, AND LAW at 99, Table 2 (2022) (regression model showing a positive association between pornography addiction and a child pornography possession/receipt offense).

The Sentencing Commission itself has recognized a link between adult pornography and child pornography, which, considering Sueiro's characteristics, further weighs in favor of limiting his access to adult pornography. In a 2012 report to Congress about federal child pornography offenses, the Sentencing Commission recounted research that found that child pornographers exhibit an "array of motivations," that often "vary" and can include "more than one motivation." *Federal Child Pornography Offenses*, United States Sentencing Commission (2012 Report) at Chapter 4, p. 76. While those motivations vary, they may include "indiscriminate deviant interests" or "other risky or illegal sexual behavior." *Id.* at 77-78. The trial record includes a wealth of evidence about Sueiro's own "indiscriminate deviant interests[,]" including his interest in "preteen hardcore videos" and pornographic videos depicting pre-pubescent children, among other things. *E.g.*, Dkt. 317 at 390:20-392:23. Considering the facts presented about Sueiro's own interests, it is appropriate to curb his access to another potential catalyst of interest in child

11

pornography—viewing electronic adult pornography—as "some offenders who have used child pornography for sexual gratification report habituation to adult pornography and an increasing need to identify new and more extreme images in order to achieve sexual arousal." *Federal Child Pornography Offenses* at 78.

To be clear, this Court has not evaluated all of the relevant social science research in depth to the absolute supposition that there is an affirmative link between adult pornography and child pornography. But the imposition of an adult pornography restriction need not stem from such a finding, as the relevant standard only commands that supervised release conditions be "reasonably related" to the 3553(a) factors and involve "no greater deprivation of liberty than is reasonably necessary" for the purposes set forth in sections 3553(a)(2)(B)-(D). 18 U.S.C. § 3583(d)(1)-(2).

Respectfully, after considering all of the relevant evidence and data appurtenant to Sueiro, this Court believes that the adult pornography restriction, in this particular case, is "reasonably related" to the 3553(a) factors. As explained above, Sueiro's history and characteristics, as presented to this Court at trial and sentencing, urge the need for an adult pornography restriction to inhibit deviant sexual interests that (1) resulted in the child pornography offenses he was convicted of; and (2) could render him susceptible to adult pornography addiction and habituation, which the Sentencing Commission itself recognized bears a nexus to child pornography. Removing electronic and telephonic access to adult pornography and related bulletin boards also deters Sueiro from his deviant predilections upon release and protects the public since most, if not all, of his offenses were perpetrated online. In addition, the link between adult pornography and child pornography is not purely theoretical; time and again, evidence has shown that individuals who perpetrate child pornography offenses often pursue a path that started with adult pornography. *See, e.g., United States v. Gibson*, 856 F. App'x 727 (Mem) (9th Cir. May 20, 2021) (affirming adult pornography condition in part because district court recognized that "many possessors of

child pornography start with the viewing of adult pornography" and cited studies that showed that "some offenders previously convicted of possessing child pornography have attributed their relapse to the viewing of adult pornography" (cleaned up)); *United States v. Meget*, Crim. No. 5-39-DLB-CJS, 2018 WL 4496651, at *5 (E.D. Ky. Aug. 27, 2018) (recounting physician testimony that "every case he has ever had involving child pornography starts with adult pornography"). In light of the record, and considering all of the circumstances, the Court concludes that a restriction on electronically-accessed adult pornography is proper here.

Moreover, the supervised release condition, as written, involves "no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). It is notable that the supervised release condition does *not* entirely forbid Sueiro from viewing adult pornography, which, as the Fourth Circuit and the Supreme Court have recognized, enjoys First Amendment protection. *United States v. Williams*, 553 U.S. 285, 288 (2008); *Van Donk*, 961 F.3d at 326. Instead, it only forbids him from accessing adult pornography electronically. That careful tailoring, which is designed to address the particular risks for Sueiro upon release and is "based upon his underlying conduct" and personal history and characteristics, is reasonable. *United States v. Mayer*, No. 21-0204-cr, 2022 WL 1447380, at *4 (2d Cir. May 9, 2022) (affirming ban on "electronically-accessed adult pornography" because it was "reasonably related to the sentencing factors and tailored to prevent any greater deprivation of liberty than necessary").

For the reasons stated above, the Court will re-impose special condition of supervised release number ten: The Defendant shall not utilize any sex-related adult telephone services, websites, or electronic bulletin boards. The Defendant shall submit any records requested by the probation officer to verify compliance with this condition including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

C. The Video Game Restriction

The last condition at issue is special condition twelve, which the Fourth Circuit referred to as the "video game ban." That condition states: "During the term of supervision, the [D]efendant shall not possess or utilize any video gaming system, console, or other such device which would enable contact and/or the sharing of data with other individuals known or unknown to the [D]efendant." Dkt. 301 at 4.

It is again important to examine the particulars of the condition of supervised release. Critically, the condition does *not* entirely foreclose Sueiro from possessing and utilizing video games; instead, it forbids him from possessing or using video games that would "enable contact and/or the sharing of data with other individuals[,] known or unknown to the [D]efendant." *Id.* Thus, respectfully, classifying the condition as a video game *ban* is not entirely correct.

The record contains numerous examples of Sueiro engaging with others online. At trial, there was extensive testimony regarding his engagement with other individuals who received or distributed child pornography online. *See, e.g.*, Dkt. 318, 645:18-646:18; 654:11-16; 656:8-16; 657:5-665:19 (describing Sueiro's use of his BoyVids account). And he was doing more than receiving information from others who were interested in child pornography: he intimated that he would be uploading his own child pornography to the site. *See id.* at 664:22-665:4 (Sueiro post on BoyVids, board, stating "I will be uploading my own videos here too . . . ."). Moreover, the Presentence Report recounts various documents that indicated that Defendant was at least preparing to post to other community sites regarding child pornography. For example, his "electronic media" included a document titled "You Tube Messages About Boy Love.Doc[,]" Dkt. 306 ¶ 87, another writing where he expressed his view that all individuals are "sexual and loving beings from birth[,]" *id.* ¶ 88, and a document that discussed specific children he was interested

in, *id.* ¶ 89.[6]  Those posts all appeared to be "drafts of chats and/or messages posted to sites such as YouTube or other social media." *Id.* ¶ 87.

In light of that, along with Sueiro's history and characteristics, a video game restriction (not a ban) is "reasonably related" to the section 3553(a) factors. 18 U.S.C. § 3583(d)(1). There is a plethora of information in the record about Sueiro's comfort with online forums, and the record shows that he appeared to be progressing from mere receipt and possession to distribution. That background highlights the risks Sueiro may pose to the public—in particular, young boys—as video games are a breeding ground for predators. *See, e.g.*, Nellie Bowels and Michael H. Keller, *Video Games and Online Chats Are 'Hunting Grounds' for Sexual Predators*, THE NEW YORK TIMES Dec. 7, 2019, https://perma.cc/2TN7-ZEBQ ("Sexual predators and other bad actors have found an easy access point into the lives of young people: They are meeting them online through multiplayer video games and chat apps, making virtual connections right in their victims' homes."); FEDERAL BUREAU OF INVESTIGATION, *It's Not a Game: FBI New York PSA*, https://perma.cc/4YTC-VR8T (FBI warning about predators targeting children via online gaming). To be sure, there was no specific allegation or finding at trial or sentencing that Sueiro had contact with a minor through the use of video games. However, the actual use of communal message boards, when combined with the evidence about the various draft posts he prepared to post to blogs and social media sites, as well as Defendant's admitted interest in video games, Dkt. 333 at 3, underscores that there is a need to protect vulnerable minors from further crimes of the Defendant and deter those who predate on minors via video game systems. 18 U.S.C. § 3553(a)(2)(C).

Finally, the video game restriction does not impose any greater deprivation of liberty than is necessary. The Court has identified a particular concern that this restriction addresses—

---

[6] Because no party objected to these paragraphs, the Court may accept them as findings of fact. Fed. R. Crim. P. 32(i)(3)(A).

15

protecting individuals (in particular, children) who are online. This restriction does just that, as it forbids Sueiro from having the opportunity or ability to contact children via video games. However, he is still able to use video gaming systems upon supervised release, so long as he cannot communicate with others via those systems. Such a tailored restriction addresses the particular concerns that this Court has, as evinced by the trial and sentencing record.

Accordingly, the Court will impose special condition twelve: During the term of supervision, the Defendant shall not possess or utilize any video gaming system, console, or other such device which would enable contact, communication and/or the sharing of data with other individuals known or unknown to the Defendant.

## IV. CONCLUSION

The Court imposes the following special conditions of supervised release on Defendant:

**Special Condition Number Six:** The Defendant shall not engage in employment or volunteer services that allow him access to computers or minors without prior Court approval.

**Special Condition Number Ten:** The Defendant shall not utilize any sex-related adult telephone services, websites, or electronic bulletin boards. The Defendant shall submit any records requested by the probation officer to verify compliance with this condition including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

**Special Condition Number Twelve:** During the term of supervision, the Defendant shall not possess or utilize any video gaming system, console, or other such device which would enable contact, communication and/or the sharing of data with other individuals known or unknown to the Defendant.

IT IS SO ORDERED.

Alexandria, Virginia
July 7, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge